IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:                              )
                                    )
Plate Restaurant Group LLC *et. al*.,   )      Case No.  25-20996
                                    )      Chapter 11
                                    )      Jointly Administered
        Debtor(s)                   )
                                    )
                                    )

OBJECTION TO CLAIM NO. 2 FILED BY IOU FINANCIAL

COMES NOW Debtor, by and through attorney Phillips & Thomas LLC, and hereby objects to proof of claim 2 filed by IOU Financial.  The claim should be allowed as a general unsecured claim, not as a secured claim.  The following are the reasons for the objection:

I. IOU Financial's Claim Was Completely Undersecured When The Bankruptcies Were Filed

IOU Financial filed a proof of claim on July 29, 2025 in case 25-20996 (Plate Restaurant Group LLC).  According to the loan paperwork attached to the claim form the borrower is actually Plate Restaurant Leawood LLC (25-20997).

The priority lienholder of the affiliate debtors in the Plate Restaurant cases is Community America Credit Union, which services a business loan through the Small Business Administration.  This loan was taken out several years before the filing of the cases, and is a

1

secured loan. Its security interest predates that of IOU Financial. Under § 506(a)(1) of the Bankruptcy Code, a claim is only a secured claim to the extent there is value in the collateral to which that lien attaches. *In re Short*, 619 B.R. 655, 659-60 (Bankr. S.D. Ohio 2020); *In Re Butler Trucking LLC*, 2025 WL 1934205 at *7. If all of the value in that collateral is secured by higher priority liens, then the claim which would otherwise be secured by that collateral is deemed to be unsecured. *Bank of Am., N.A. v. Caulkett*, 575 U.S. 790, 135 S.Ct. 1995, 1999, 192 L.Ed.2d 52 (2015). Section 506(d) provides, "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."

The alleged secured claim of IOU Financial is inferior to that of Community America Credit Union. Community America Credit Union has not yet filed its claim, but it is known to predate the loan of IOU Financial. At the time of the filing of the case, there was no unencumbered collateral for IOU Financial's loan to attach to. It is an entirely undersecured loan.

## II. IOU Financial Cannot Claim A Security Interest In The Future Earnings Or Accounts Receivable Of The Debtor

IOU Financial asserts a claim in the future accounts receivable of the Debtor. Article 9 of the Uniform Commercial Code does not permit this. It does not allow a party to create a security interest in property that does not yet exist. Under U.C.C. § 9-203(b)(2), a debtor must have "rights in the collateral or the power to transfer rights in the collateral" in order for a security interest (including the security interest of a purchaser of receivables) to attach. As the Official Comments to that section explain, "[a] debtor's limited rights in collateral, short of full

ownership, are sufficient for a security interest to attach. However, in accordance with basic personal property conveyancing principles, the baseline rule is that a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be." See *In Re Watchmen Security LLC* at *5.

The Bankruptcy Code also does not permit IOU Financial's lien to attach to any post-petition accounts receivable. Section 552 of the Code cuts off a secured creditor's interest in post-petition property, with the exception of the "proceeds" of secured collateral. But the Debtor is a restaurant, which is a service business. Debtor's post-petition receivables are not "proceeds" of pre-petition collateral. Section §102(64) of Article 9 of the U.C.C. defines "proceeds" as:

> (A) Whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral.
> (B) Whatever is collected on, or distributed on account of, collateral.
> (C) Rights arising out of collateral.

Section 552(a) of the Code states the rule that a prepetition security interest does not extend to property acquired by the estate after the filing of the bankruptcy petition. The exception to this general rule, found in § 552(b), applies to proceeds, product, offspring, or profits of encumbered property acquired post-petition if (1) the parties entered into a security agreement before the bankruptcy petition was filed; *and* (2) the security interest extends to prepetition property of the debtor and to proceeds, product, offspring, or profits of such property. Creditors cannot reach property of the debtor acquired post-petition, but §552(b) provides an exception if the creditor can demonstrate an identifiable connection between prepetition and post-petition property. See *Smoker v. Hill & Assocs.*, 204 B.R. 966, 973 (N.D. Ind. 1997).

Debtor operates as a restaurant which serves food to patrons. It is a service business, not a sale business. A service business is different from a sales or manufacturing business. The revenues generated by the restaurant are made by human labor done "on the spot" and at the time the meals are served. Any of the Debtor's post-petition receivables arise from services performed by Debtor post-petition and, therefore, cannot be identifiable proceeds of pre-petition collateral. There is no possibility that the receivables generated by Debtor post-petition were proceeds of any of the creditor's pre-petition receivables or other collateral. See *In Re Watchmen Security LLC* at *8.

III.  The Contract Between Debtor And Creditor Is A Loan Contract, Not A Sale Of Future Receivables

Restaurants commonly make use of "merchant cash advance" (MCA) types of contracts to finance operations. These arrangements, which are generally at extremely high interest rates and often predatory in nature, are closely scrutinized by bankruptcy courts. Some MCA creditors draft agreements characterized as "sales" of future receivables, instead of loans. This is not apparently not the case with the present claim of IOU Financial; its loan document clearly states that it is a "loan." Nevertheless, Debtor believes it is useful to address the issue, which may arise with other creditors.

Whether a transaction is a loan or a true sale is a fact-based issue for bankruptcy courts to determine. A significant line of cases has articulated the factors that courts generally examine. See, e.g., *In Re Butler Trucking, LLC*, 2025 WL 1934205 (W.D. Ohio); *J.P.R. Mech. Inc. v. Radium2 Cap., LLC (In re J.P.R. Mechanical Inc.)*, 2025 WL 1550541 at **6-9, 2025 Bankr.

LEXIS at **16-27 (Bankr. S.D.N.Y. May 30, 2025) ("The Agreements are loans"); *Monday Funding v. Black Friday Deals AZ Inc.*, 85 Misc.3d 1286(A), 232 N.Y.S.3d 382 (Table), 2025 WL 1479316, 2025 NYNJ LEXIS 1718, 2025 N.Y. Slip Op. 50804(U) (Sup. Ct. N.Y. Cnty. May 13, 2025); *B&T Supplies, Inc. v. Gemj Chehebar Grat, LLC*, 2025 WL 831110 at *9, 2025 U.S. Dist. LEXIS 48435 at **25- 26 (S.D.N.Y. March 17, 2025) ("Plaintiffs plausibly allege that the MCA Agreements were unlawful loans.").

We must note that courts do not rely on the labels affixed to documents by creditors. What matters is what is actually happening in the transaction. Courts examine, among other things, whether the economic risk of ownership truly transferred to the purported buyer. See, e.g.*, Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F.Supp.3d 2022 WL 2829913, 237, 247 (S.D.N.Y. 2022); *Lateral Recovery LLC v. Queen Funding*, LLC, 2022 WL 2829913 at *4 & *6, 2022 U.S. Dist. LEXIS 129032 at **12-13, **18-19 (S.D.N.Y. July 20, 2022); *In re Shoot The Moon, LLC*, 635 B.R. 797, 813-814 (Bankr. D. Mont. 2021) ("a consideration that overlays and unites the factors is how the parties allocated risk. A sale typically occurs when the risk of loss from the purchased assets passes to the buyer...").

Courts generally weigh three factors in considering whether a transaction is a loan or a true sale of future receivables: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy. *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, No. 22-1885-cv, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023) (quoting *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 179 N.E.3d 612, 621-22 (N.Y. 2021)). Within the first two of these factors,

courts examine whether the merchant could practically invoke the reconciliation provision. See *Fleetwood*, 2022 WL 1997207, at *13 ("The Fleetwood Agreement nominally has a reconciliation provision .... But that provision functions in such a way that renders it largely illusory."), and whether, even if the agreement purports to have no maturity date, it has a "de facto fixed term," *Lateral Recovery LLC v. Queen Funding, LLC*, No. 21 Civ. 9607 (LGS), 2022 WL 2829913, at *6, 2022 U.S. Dist. LEXIS 129032 (S.D.N.Y. July 20, 2022).

But these three factors are only a guide. They do not always dictate the conclusion. *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 452 (S.D.N.Y. 2022) (quoting *Fleetwood*, 2022 WL 1997207, at *9). Courts also consider whether the agreement at issue identifies the accounts purchased and whether the "purchaser" may possess, use or convey them, which party bears responsibility for collecting the accounts, and the number of payments a merchant can miss before finding itself in default. *Fleetwood*, 2022 WL 1997207, at *10-11. Courts also consider whether the daily payment rates appear to be good faith estimates of the merchant's revenues. *Davis v. Richmond Cap. Grp., LLC*, 150 N.Y.S.3d 2, 4, 194 A.D.3d 516 (App. Div. 1st Dep't 2021). "The root of all of these factors is the transfer of risk. Where the lender has *purchased* the accounts receivable, the borrower's debt is extinguished and the lender's risk with regard to the performance of the accounts is direct, that is, the lender and not the borrower bears the risk of non-performance by the account debtor." *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1069 (2d Cir. 1995).

Furthermore, we should also note that it is a time-honored principle of law that an entity cannot sell what it does not yet possess. "The general rule of law is undoubted that no one can transfer a better title than he himself possesses. *Nemo dat quod non habet*." Barnard v.

6

*Campbell*, 55 N.Y. 456, 461, 14 Am. Rep. 289 (1874); *Mitchell v. Hawley*, 83 U.S. (16 Wall.) 544, 550, 21 L.Ed. 322 (1873) ("No one in general can sell personal property and convey a valid title to it unless he is the owner or lawfully represents the owner. *Nemo dat quod non habet*."); *JPMorgan Chase Bank, National Association v. Argus Information & Advisory Services Inc.*, 765 F. Supp.3d 367, 377 (D. Del. 2025)(citing, *Anderson Excavating, LLC v. Weiss World L.P.*, 638 F. Supp. 3d 525, 534 (W.D. Pa. 2022) ("A cornerstone of property law is the maxim *nemo dat quod non habet*: a party cannot transfer rights that it does not have."). In a restaurant business, where funds are not created until the labor is done in the future, a creditor cannot claim an interest in something that does not yet exist.

In the present contract executed between the debtor and IOU Financial, there can be no doubt that it is a loan, and not a sale of future receivables. The very first page of the promissory note document, attached to the proof of claim, states that it is a "note or loan." The agreement contains no reconciliation agreement, which would allow the debtor to request a downward adjustment of its payments if business revenue declines. Just the opposite, in fact: the loan agreement has a provision (paragraph 14) for "unconditional payment." The agreement is for a fixed term and has a fixed repayment amount. The term is 53 payments of $3834.91 per week, as stated on the first page of the loan agreement, and the repayment amount is given as $203,250.00.

If IOU Financial were actually purchasing the accounts receivable of the debtor, the borrower's debt would be extinguished and the lender's risk with regard to the performance of the accounts would be direct. In a true sale, the lender, IOU Financial, and not the borrower would

7

Case 25-20996    Doc# 52    Filed 08/28/25    Page 7 of 9

bear the risk of non-performance by the debtor.  That is not what is happening here.  In this case, we have a high-interest, fixed-duration loan.

WHERFORE, Debtor requests that claim no. 2 of IOU Financial be disallowed as a secured claim, and allowed as a general unsecured claim.

Respectfully Submitted,

Phillips & Thomas LLC

By:  /s/ George J. Thomas
George J. Thomas #19230
5251 W. 116th Place, Ste. 200
Leawood, KS 66211-2011
Phone: (913) 385-9900
Email:  geojthomas@gmail.com

NOTICE WITH OPPORTUNITY FOR NONEVIDENTIARY HEARING ON OBJECTION TO PROOF OF CLAIM 2 FILED BY IOU FINANCIAL
==

NOTICE IS HEREBY GIVEN, that if no written response is filed to the Objection to Proof of Claim 2 with the US Bankruptcy Court in Kansas City, Kansas, on or before September 28, 2025, the Court will enter an order prepared and submitted by the movant within ten (10) days of the objection deadline and no hearing will be held.  If an objection or response is timely filed, a nonevidentiary hearing will be held before the U.S. Bankruptcy Court, 500 State Ave., Rm. 144, Kansas City, Kansas 66101 on October 9, 2025 at 1:46 pm, or as soon thereafter as the Court's schedule permits.

8

Case 25-20996    Doc# 52    Filed 08/28/25    Page 8 of 9

Respectfully Submitted,

Phillips & Thomas LLC

By: /s/ George J. Thomas 19230
5251 W. 116th Place, Ste 200
Leawood KS  66211-2011
Phone:  913-385-9900
Email:  geojthomas@gmail.com

Certificate of Service

      I hereby certify that the Objection to Proof of Claim 2 and the above notice were filed in the US Bankruptcy Court for the District of Kansas on August 28, 2025, and served on the creditor in interest electronically via certified US Mail, postage prepaid, in accordance with F.R. 7004(h) at the following address:

    IOU Financial
    Attn:  Jason E. Stevens, Vice President
    600 Town Park Ln
    Ste 100
    Kennesaw GA 30144


/s/ George J. Thomas
George J. Thomas, Counsel for Debtor